1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helen R. Hendricks,       ) | No. CIV-04-2500-PHX-MHM |
|     Plaintiff,            ) | **ORDER** |
| vs.                       ) | |
| Jo Anne B. Barnhart, Commissioner of Social Security, ) | |
|     Defendant.            ) | |

Plaintiff Helen R. Hendricks seeks judicial review of the Administrative Law Judge's decision denying her claim for disability insurance benefits.

**I.    Procedural History**

Plaintiff Helen Hendricks ("Plaintiff") filed an application for Disability Insurance Benefits on August 3, 2001, alleging disability beginning May 4, 2001 under Title II of the Social Security Act, 42 U.S.C. § 401 et. seq. (Certified Transcript of Administrative Proceedings "Tr." 97-99). Administrative Law Judge Ronald S. Robins ("ALJ") of the Phoenix Office of Hearings and Appeals held a hearing on February 26, 2003 to determine whether Plaintiff was disabled within the meaning of the Social Security Act. Plaintiff appeared with counsel, Alan M. Schiffman, Esq., and testified. Additionally, Mark Kelman, a vocational expert (VE), also testified and Plaintiff's husband, Phil Hendricks, was present as an observer. No other persons appeared (Tr. 33-72). The ALJ denied Plaintiff's application (Tr.19-27). On October 29, 2004, the Appeals Council denied Plaintiff's request

for review rendering the ALJ's decision as the Commissioner's final decision with respect to Plaintiff's application (Tr. 8-10). Plaintiff then timely commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

**II.    Background Facts**

    **A.  Plaintiff's Medical History**

Plaintiff was born on November 20, 1944. (Tr. 97.) She alleged that she became unable to work on May 4, 2001 because of peripheral neuropathy, diabetes and edema which she claims cause swelling and excruciating pain, preventing her from conducting work as required. (Tr. 105).

On April 3, 2001, Sergio Szpaizman, M.D. ("Dr. Szpaizman"), a treating physician, diagnosed Plaintiff with peripheral neuropathy due to Type II diabetes opining that she could perform a sitting job, *i.e.*, work an 8-hour day with the ability to sit for 8 hours and stand for 1 hour, and occasional bending/stooping, climbing, pushing/pulling, and lifting/carrying up to 10 pounds. (Tr. 231).

On April 5, 2001, Arlene Polakof, D.P.M. ("Dr. Polakof"), whom had been providing foot treatment to Plaintiff regularly since June of 2000, recorded that Plaintiff had sustained an increase in swelling in lower extremities and advised Plaintiff to "put her feet up as much as possible." (Tr. 199). She also stated that "she needs to consider changing her job situation, or going on disability considering the severity of her neuropathy." (Tr. 199). On June 28, 2001, Dr. Polakof again noted that Plaintiff's feet were very tender and stated, "I have known her many years and this is the worst I have ever seen her swelling." (Tr. 195).

On September 25, 2001, State agency reviewing physician James G. Hopkins, M.D. ("Dr. Hopkins") made a primary diagnosis of diabetes with peripheral neuropathy and a secondary diagnosis of dependent edema (Tr. 158-165). Dr. Hopkins further noted that Plaintiff's pain prevents her from any prolonged standing but she is able to take care of personal needs, cook, and clean house, though it takes longer. The doctor noted that she drives a car and runs errands and therefore should be capable of sedentary activity and that "Plaintiff is only partially credible." (Tr. 163). Dr. Hopkins therefore opined that Plaintiff

could lift/carry ten pounds frequently and 20 pounds occasionally, stand/walk at least two hours in an eight hour workday, sit with normal breaks for a total of about six hours in an eight hour workday, with no limitations other than her ability to lift/carry. (Tr. 159).

On May 31, 2002, another State agency physician, Willis Warner, M.D. ("Dr. Warner") gave a primary diagnosis of diabetes mellitus, a secondary diagnosis of neuropathy, and identified hypertension and neuropathy as another alleged impairment. (Tr. 221). Dr. Warner noted that Plaintiff's "allegations seem only partially credible." (Tr. 226). Dr. Warner further noted that Plaintiff's diabetes mellitus and edema are now under better control and neuropathy does not compromise motor function. (Tr. 226). Dr. Warner opined the same limitations as Dr. Hopkins, but noted that Plaintiff had limited ability to push/pull in her lower extremities due to the neuropathy, and opined Plaintiff should avoid concentrated exposure to extreme cold, heat, vibration and hazards such as machinery, heights, etc. (Tr. 222, 225).

On September 24, 2002, Dr. Szpaizman diagnosed peripheral neuropathy, Type II diabetes, hypertension, and proteinuria (an excess of serum proteins in the urine) (Tr. 331) as well as noted Plaintiff's obesity. (Tr. 319). Dr. Szpaizman also noted that standing or walking over one hour causes "burning foot pain" and opined that Plaintiff's ability to sustain prolonged standing or walking is limited due to her impairments. (Tr. 331). Dr. Szpaizman also opined that Plaintiff is unable to perform her regular occupation or any other full or part-time occupation with reasonable continuity. (Tr. 331).

Plaintiff was first referred to Robert S. Cohen, D.O. ("Dr. Cohen") in April of 2000. (Tr. 342) where he diagnosed "type II diabetes mellitus with multiple sequelae, including hypertension, hyperlipidemia, and diabetic neuropathy." (Tr.344). He provided periodic treatment to Plaintiff. (Tr. 337-38). In April 2003, Dr. Cohen noted that Plaintiff was suffering from "more significant medical illnesses that she was not having previously." (Tr. 352-53). He further stated that, "[a]t this time, I think she will be classified as disabled due to her medical illnesses." (Tr. 353). Finally, on August 13, 2003, Dr. Cohen noted that Plaintiff's condition causes her to feel fatigued and sustain lapses in concentration. He

opined that she is unable to work because of the pain causing her concentration deficit. (Tr. 365). This opinion was deemed to be part of the record by the Social Security Appeals Council in denying Plaintiff's request for review. (Tr.11).

### B. Hearing Testimony

At the hearing before the ALJ, Plaintiff asserted that she is unable to work due to swelling and pain in her feet and from her inability to get a good night's sleep which prevents her from being able to concentrate at work. (Tr. 39-40). She further testified that she takes the following medications: Neuronic, Glucophage, Glyburide, Avandian (phonetic), Lasix, Prednival, Propanediol, Zocor, hormone medication, and an experimental drug, SNK 860. She also testified to previously taking amitriptyline. (Tr. 44). Medication side effects include diarrhea and Plaintiff's husband claims that fatigue occurs, though Plaintiff claims she does not become fatigued from her medication. (Tr. 44, 46). Additionally, Plaintiff takes Imitrex for migraine headaches that occur every two to three months and last a couple of days (Tr. 50-51). Plaintiff further testified that she rides an electrical cart on grocery store trips, and uses a cane to take the weight off of her legs and feet (Tr. 46, 51-52). Plaintiff describes her pain, after walking five to ten minutes, close-to, but not quite, childbirth pain (Tr. 53). She does do some household chores which requires rest after a half hour (Tr. 56-57). Plaintiff asserts that she sleeps during the day because she only receives four to six hours of sleep per night. In regards to daily activities, the Plaintiff admits to trying to do housework, reading, sewing, and attends an oil painting class occasionally (Tr. 48).

At the hearing, the Vocational expert, Mark Kelman testified that when taking Plaintiff's testimony as credible that there would be no work for her. (Tr.67). Further, in considering the pain that Plaintiff allegedly incurs, Mr. Kelman concluded that there would be no work for her. (Tr. 68). However, when the ALJ posed his hypothetical to Mr. Kelman including the following characteristics: "a 58 year old female.... with the following limitations... the individual can sit about eight hours; could stand no more than one hour; [and] stand and or walk no more than one hour... could occasionally bend or stoop; occasionally climb stairs; occasionally push, pull, lift up to ten pounds..." he concluded that

Plaintiff could perform any jobs to which her previous skills transfer. (Tr.67). Such jobs would include receptionists, customer service and secretarial. (Tr.66).

### C. The ALJ's Conclusion

As to the first stage of the ALJ's five stage analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of May 4, 2001. (Tr. 20). As to the second stage, the ALJ found that Plaintiff had the following severe impairments: diabetes, mellitus, neuropathy, high blood pressure under control, and leg pain. (Tr. 20).

As to the third stage, the ALJ found that Plaintiff's impairments did not constitute an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, 20 CFR Part 404. (Tr. 20). The ALJ determined that "none of the claimant's impairments medically meet or equal the criteria of any listed impairments. No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." (Tr. 20). As to the fourth stage, the ALJ found the Plaintiff is unable to perform her past relevant work (Tr. 25).

As to the fifth stage, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary semi-skilled work as a receptionist, customer service representative or a secretary which exist in significant numbers in the regional and national economy and, therefore, is not under a disability within the meaning of the Act and Regulations. (Tr. 25).

### III. Standard of Review

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir.

Plaintiff could perform any jobs to which her previous skills transfer. (Tr.67). Such jobs would include receptionists, customer service and secretarial. (Tr.66).

### C. The ALJ's Conclusion

As to the first stage of the ALJ's five stage analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of May 4, 2001. (Tr. 20). As to the second stage, the ALJ found that Plaintiff had the following severe impairments: diabetes, mellitus, neuropathy, high blood pressure under control, and leg pain. (Tr. 20).

As to the third stage, the ALJ found that Plaintiff's impairments did not constitute an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, 20 CFR Part 404. (Tr. 20). The ALJ determined that "none of the claimant's impairments medically meet or equal the criteria of any listed impairments. No treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment." (Tr. 20). As to the fourth stage, the ALJ found the Plaintiff is unable to perform her past relevant work (Tr. 25).

As to the fifth stage, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary semi-skilled work as a receptionist, customer service representative or a secretary which exist in significant numbers in the regional and national economy and, therefore, is not under a disability within the meaning of the Act and Regulations. (Tr. 25).

### III. Standard of Review

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir.

1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g). An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

> (1) determine whether the applicant is engaged in "substantial gainful activity;"
>
> (2) determine whether the applicant has a "medically severe impairment or combination of impairments;"
>
> (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;
>
> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) citing 20 C.F.R. §§ 404.1520(b)-(f). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

**IV.   Discussion**

Plaintiff has raised five grounds of error regarding the ALJ's conclusion. Plaintiff contends that the ALJ erred by: 1) rejecting the opinions of Plaintiff's treating physicians, Dr. Szpaizman and Dr. Cohen; as well failed to consider the findings of Dr. Polakof, and 2) failing to find that Plaintiff's pain, fatigue, and swelling constitute severe impairment; 3) improperly assessing Plaintiff's credibility; 4) failing to consider the lay witness statement of Plaintiff's husband; and 5) failing to consider the impact of Plaintiff's obesity. Plaintiff requests this Court enter an order reversing the ALJ's decision with an award of benefits rather than remand for further proceedings.

**A.  Opinions of Dr. Cohen, Dr. Szpaizman and Treatment of Dr. Polakof.**

Plaintiff contends that the ALJ erred when discounting the medical opinions of the treating physicians, Drs. Cohen and Szpaizman and failing to consider the findings of Dr. Polakof.  In disability proceedings, primary weight is given to the views of treating physicians, absent substantial evidence that would provide specific and legitimate reasons for rejecting them.  Bergfeld v. Barnhart, 361 F. Supp.2d 1102, 1111 (D. Ariz. 2005).  The ALJ must make findings setting forth specific, legitimate reasons supported by substantial evidence in the record for rejecting testimony of treating physicians whether the testimony is controverted or not.  Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Id.; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002).

Plaintiff argues that the ALJ rejected the opinions of Dr. Cohen and Dr. Szpaizman without setting forth specific, legitimate reasons supported by substantial evidence or citing to the record to support his conclusion.  Both Dr. Cohen and Dr. Szpaizman found the Plaintiff to be unable to work. (Tr. 24).  Additionally, Dr. Polakof, although not issuing a formal opinion, recommended that the Plaintiff "consider changing her job situation, or going on disability considering the severity of her neuropathy" as well recommended that the Plaintiff elevate her feet as much as possible and documented the progression of her pain and swelling.  (Tr. 69, 70, 195, 199).  Defendant contends; however, that the ALJ properly rejected the opinions of Dr. Cohen and Dr. Szpaizman's because each lacked objective medical support and the ALJ properly considered Dr. Polakof's treatment in rendering his decision.

**(1) Dr. Cohen's Opinion**

Defendant states the ALJ properly rejected Dr. Cohen's opinion because it was based on Plaintiff's subjective complaints.  (Tr. 24) ("It is quite clear that Dr. Cohen relied somewhat heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant

- 7 -

reported"). This assertion is flawed. First, there is substantial evidence in the record supporting Plaintiff's subjective complaints, thus the ALJ should have at the very least explained in detail why such reliance by Dr. Cohen was impermissible. For example, it is well documented throughout the record that the Plaintiff encountered multiple instances of pain, fatigue and swelling associated with her peripheral neuropathy, diabetes and edema. (Tr. 153,174,195,199,207,331, 352-53). Second, the ALJ is empowered with the ability to reject a treating physician's opinion based upon his treatment of the plaintiff; however, to do so, the ALJ must provide the requisite specific and legitimate reasons for rejecting the opinion. Bergfeld 361 F. Supp.2d at 1111 (D. Ariz. 2005); see also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (stating ALJ may reject treating physician's opinion by providing specific and legitimate reasons; however he must do more than simply offer his conclusions, he must set forth his own interpretations and explain why the treating doctor's conclusions are incorrect.). Here, simply disregarding Dr. Cohen's history of treatment and opinion by simply noting that Dr. Cohen improperly relied upon Plaintiff's subjective complaints does not rise to the requisite level. Rather, for this Court to accept the ALJ's findings, the ALJ would have had to identify why Plaintiff's complaints were wholly subjective; and explain why the ALJ's findings were more accurate or reliable than Dr. Cohen's. Because the ALJ failed to do so, this Court cannot deem his rejection of Dr. Cohen's opinion to be without error.

**(2) Dr. Szpaizman's Opinion**

Defendant further claims that Dr. Szpaizman's opinion that Plaintiff was "unable to work" was properly rejected by the ALJ because it was conclusory in nature and lacks objective medical support (Tr. 24) (the ALJ assigned no weight to the opinion because it is "conclusory , providing no explanation of the evidence relied on in forming that opinion"). However, as mentioned above, it is clear from the record that there is objective medical evidence supporting Plaintiff's condition and the symptoms associated with it. (Tr. 153,174,195, 199, 207,331, 352-53). Further, Dr. Szpaizman as Plaintiff's treating physician provided treatment over an extended period of time, and thus was in the best position to

provide an insightful examination and opinion of Plaintiff's medical condition. Therefore, a simple rejection based upon conclusory grounds does not suffice. See Morgan v. Commissioner of Social Sec. Admin, 169 F.3d 595, 600 (9th Cir. 1999) (stating opinion of treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

Additionally, the ALJ rejected Dr. Szpaizman's opinion that Plaintiff cannot work because "it is not clear that the doctor meant that the claimant was unable to perform any work that exists in significant numbers in the national economy" (Tr. 24). However, it is not the Plaintiff's burden (or her doctor's) to show that jobs exist in the national economy, rather, this burden shifts to the Commissioner at step five of the sequential process. Penny, 2F.3d at 956. Thus, the fact that Dr. Szpaizman did not state that Plaintiff can or cannot perform certain jobs in the economy is irrelevant and in no way suggests that he believes Plaintiff is not disabled. If there was a question as to the meaning of Dr. Szpaizman's statement, the ALJ should have followed up with Dr. Szpaizman. See Tonepetyan v. Hatler, 242 F.3d 1144, 1150 (9th Cir. 2001) (stating that the ALJ has a duty to develop the record and to assure claimant's interests are considered). Thus, again, the ALJ's rejection on the basis of Dr. Szpaizman's position being conclusory does not provide a sufficient basis for rejection as he failed to set forth the requisite specific and legitimate reasons for doing so.

**(3) Dr. Polakof's Treatment**

Lastly, the Plaintiff argues that Dr. Polakof's treatment was improperly ignored by the ALJ. As Plaintiff's treating podiatrist, Dr. Polakof had recommended that Hendricks elevate her legs as much as possible to reduce swelling. (Tr. 69,70,199). Based on this evidence, the vocational expert testified that she would be unable to work. (Tr.70). However, as Plaintiff points out, the ALJ's decision fails to even mention this aspect of Plaintiff's treatment and does not give specific and legitimate reasons why it was not included or rejected. (Tr. 25). Clearly, the fact that the vocational expert rendered an opinion of disability upon such a

diagnoses requires that it at the very least be addressed by the ALJ in determining that Plaintiff was not disabled.

Additionally, the ALJ in rendering his decision, did not address the references by Dr. Polakof noting the significant swelling Plaintiff sustained over the time period he had treated her. (Tr. 195, 199). The swelling associated with Plaintiff's disability appears to be one of the most significant symptoms associated with her alleged disability. The ALJ should have addressed why Dr. Polakof's continuous treatment of this issue was not necessary.

Thus, because the ALJ failed to properly consider the opinions of Dr. Cohen and Dr. Szpaizman and failed to properly consider the treatment by Dr. Polakof without first setting forth specific, legitimate reasons in rejecting them, his decision constitutes error. Bergfeld, 361 F. Supp. 2d at 1113.

### B. Pain, Fatigue, and Swelling

Plaintiff next contends that the ALJ failed to properly classify Plaintiff's "pain, fatigue and swelling" as severe impairments. An impairment must be established by both objective medical evidence and subjective evidence. 20 C.F.R. §§404.1508 and 404.1512(b)(1) (2004). An impairment is only severe if it significantly limits a claimant's physical or mental abilities to perform basic work activities. 20 C.F.R. § 404.1521 (2004). Defendant argues that the ALJ's determination was sound as there is no objective medical evidence that Plaintiff's pain, fatigue and swelling are impairments that limit her functional work abilities. This position is not well taken.

As discussed above there is both objective and subjective evidence in the record demonstrating that the pain, fatigue and swelling sustained by Plaintiff was severe. For instance, as early as April 2001, Dr. Polakof recorded that Plaintiff had significant swelling as well as was very tender when touched. (Tr. 199). Then again, on June 28, 2001, Dr. Polakof noted that she treated the worst amount of swelling she had encountered with Plaintiff. (Tr. 195). In July 2002, Dr. Szpaizman stated that standing or walking by Plaintiff for one hour caused "burning foot pain." (Tr. 331). Additionally, Dr. Cohen's treatment and the records provide objective evidence that Plaintiff was suffering from these symptoms. (Tr.

153, 174, 207, 352-53, 365). Moreover, the record plainly demonstrates that these limitations limit her ability to perform basic work activities. Both Dr. Szpaizman and Cohen opined that the Plaintiff was disabled based upon such symptoms. Additionally, Plaintiff expressly testified to these symptoms at the hearing. (Tr. 39-40).

Additionally, the ALJ's failure to even include these limitations in the hypothetical posed to the vocational expert (Tr. 66) was erroneous because the decision not to include them was not based upon specific findings and substantial evidence. See Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir. 1997) (finding that ALJ's failure to include relevant impairments to the vocational expert was error where the ALJ did not make specific findings explaining his rational for disbelieving the claimant's subjective complaints). Rather, the ALJ appeared to ignore the evidence of these impairments even though Plaintiff testified regarding these symptoms and they were supported by the record. (Tr. 39, 40). Thus, the ALJ's failure to deem Plaintiff's pain, swelling and fatigue as a severe impairment was error and should have been posed to the vocational expert.

**C. Plaintiff's Credibility**

Plaintiff next contends the ALJ erred by improperly determining Plaintiff's credibility regarding her pain and other symptoms. The ALJ is not required to believe pain testimony and may disregard it if there are no objective medical findings which "could reasonably be expected to cause some pain." Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). However, "if there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be clear and convincing and supported by specific findings." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993), see also Cotton v. Bowen, 799 F.3d 1403 (9th Cir. 1986) (stating that claimant who bases disability on subjective symptoms must provide objective evidence of an underlying impairment which would reasonably be expected to produce pain or other symptoms alleged.). Pain testimony "should be considered in the disability determination process so long as the pain is associated with a clinically demonstrated impairment." Varney

v. Sec'y of Health and Human Serv., 846 F.2d 581, 584 (9th Cir.1988), *rev'd on other grounds upon reh'g*,859 F.2d 1396 (9th Cir.1988) (citation omitted).

In the present case, there is objective medical evidence of Plaintiff's struggle with pain as well as multiple citations of her related symptoms of fatigue and swelling (Tr.153,174,195, 199, 207,331, 352-53, 365). The ALJ rejected Plaintiff's symptom testimony because of inconsistencies in the record as a whole and lack of objective medical findings. (Tr.23). The ALJ neither made sufficient findings as to the basis for rejecting Plaintiff's testimony nor cited adequate evidence of malingering. If the ALJ wished to reject Plaintiff's symptom testimony, he was required to point to specific facts in the record.

Here, in making references to the record in calling into doubt Plaintiff's credibility the ALJ did not make accurate findings. For instance, with respect to Plaintiff's claim that she was unable to sleep at night, the ALJ stated that it was not "corroborated in the record." (Tr.23). However, a review of the record reveals multiple references to such complaints by the Plaintiff. (Tr. 174, 153, 207). The ALJ discredited Plaintiff's allegation of her inability to concentrate by noting "there is no indication in the medical records that she is unable to concentrate." (Tr. 23). This position is clearly rebutted by Dr. Cohen's opinion, which is part of the record, that the Plaintiff is unable to work because of her concentration deficit caused by her pain. (Tr. 11, 365). It is also noted by Plaintiff's husband that the Plaintiff struggled to complete tasks because of her decreased ability to stand, walk or sit. (Tr. 156). The ALJ also concluded that the Plaintiff's testimony regarding her inability to sit or engage in prolonged sitting or standing was not credible because there were no therapies recommended for her feet by her podiatrist. (Tr.23). However, such a position wholly ignores the regular treatment provided by Dr. Polakof every three months and the fact that Dr. Polakof advised Plaintiff to put her feet up as much as possible. (Tr. 199). Lastly, the ALJ concluded that "[t]here is no objective medical evidence to support claimant's allegation that she is unable to sit for more than one hour." (Tr. 24). However, the letter from Dr. Cohen on August 13, 2003 controverts such a conclusion as Dr. Cohen explains "[w]hen she [Plaintiff] works in a sitting position at work with her legs being down, she develops massive edema of the lower

extremities which causes her severe leg pain... leaving her to have great difficulty ambulating because of the pain." (Tr. 11, 65). However, in spite of Dr. Cohen's opinion, the Appeals Council rejected Plaintiff's plea to fully consider this evidence. (Tr. 11).

Thus, in reviewing the bases for determining Plaintiff's credibility regarding her pain and other symptoms it is clear that the ALJ has not advanced the requisite clear and convincing reasons. Rather, the ALJ advanced reasons calling into doubt Plaintiff's credibility that are simply not supported by the record. As such, the ALJ's determination on this issue constitutes error.

### D. Husband as Lay Witness

20 C.F.R. § 404.1513(d)(4) mandates consideration of observations by non-medical sources, including friends and family members regarding the severity of the claimant's impairments and how they affect the claimant's ability to work. Schneider v. Commissioner, 223 F. 3d 968 (9th Cir. 2000). Furthermore, this evidence is important when evaluating the credibility of a claimant. See Bergfeld, 361 F. Supp.2d at 1114.

Here, the ALJ provided no mention of Plaintiff's husband Third-Party Questionnaire in rendering his decision. Defendant argues that this omission was harmless error because the husband's testimony relates only that Plaintiff cooks, cleans, does laundry and attends an oil painting class (Tr. 154). However, Defendant fails to mention that the husband's statement also corroborates Plaintiff's testimony that she lacks the stamina or concentration to complete a task, travel is restricted and she must sleep during the day because of medication (Id.). These were relevant factors in the ALJ's determination questioning Plaintiff's credibility and the ALJ should have at the very least addressed Plaintiff's husband's testimony on those issues as his observations are relevant to Plaintiff's credibility.

### E.  Obesity

Plaintiff has been diagnosed as obese (Tr. 319), thus Plaintiff contends that it was error for the ALJ not to consider this as a factor when evaluating disability. As Plaintiff points out, Social Security Rule 02-1p states that although "obesity" has been deleted from the listing of impairments it is still to be considered when evaluating disability because it

- 13 -

commonly leads to, and often complicates, other impairments such as chronic diseases and increases the risk of developing such impairments as diabetes and others. Thus, Plaintiff claims that the ALJ was required to consider that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p.

Conversely, Defendant contends that the ALJ did properly consider the Plaintiff's obesity in rendering his conclusion and that no physician ever opined that Plaintiff's obesity imposed a physical limitation upon the Plaintiff. However, a review of the record demonstrates that Plaintiff's obesity was noted several times and was determined to be a cause of Plaintiff's struggles including her "foot pain." (Tr. 319,352-53). Moreover, the ALJ's determination is noticeably absent of any reference to Plaintiff's obesity. Because of the contributing effect obesity may have on other conditions the ALJ was required to at the very least address Plaintiff's obesity and any contributing effect it had on Plaintiff.

### F.   Immediate Award or Further Proceedings Upon Remand

In Connett v. Barnhard, 340 F. 3d 871, 876 (9th Cir. 2003), the Ninth Circuit set forth that an award of benefits is discretionary where the reasons for the ALJ's denial are legally insufficient. If the court determines that there are specific findings still to be made than a remand is appropriate. Benecke v. Barhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. Id. (citing Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). "[T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of social security disability benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are not outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id.; Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

Here, the Court finds that ALJ improperly disregarded the Plaintiff"s and treating physician's opinions that Plaintiff was "disabled."  Specifically, the ALJ did not set forth sufficient grounds for rejecting this evidence.  Because the ALJ failed to do so, the Court credits this testimony as true. See Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir.1989)). Additionally, in making this determination there are no more pending issues that need to be resolved.  Rather, in giving proper deference to the rejected evidence any outstanding issues are resolved.  Lastly, even if this Court did remand this matter the Commissioner would have no choice but to find that Plaintiff is "disabled" within the meaning of the Act. As such, upon remand, Plaintiff is entitled to an award of benefits.

**Accordingly,**

**IT IS ORDERED** Plaintiff's Motion for summary judgment is granted. (Dkt. #7).

**IT IS FURTHER ORDERED** Plaintiff's Motion for extension of time to file a response is granted.  (Dkt. #9).

**IT IS FURTHER ORDERED** Defendant's cross Motion for summary judgment is denied. (Dkt. #10).

**IT IS FURTHER ORDERED** that this matter be remanded to the Commissioner of Social Security for an award of benefits.

DATED this 24th day of March, 2006.

_____
Mary H. Murguia
United States District Judge